Good morning, and may it please the Court, Jason Crowell for the Plaintiff and Appellant, William Wallace Campbell. Speak up. Thank you, Your Honor. I would first like to note that Mr. Campbell and his wife are here in the courtroom today. Your Honors, in this case, the District Court granted summary judgment of dismissal in error really for two reasons. First of all, the judgment was wrong on the law of vicarious liability under both Ninth Circuit and Washington State Court precedent. So what's the underlying tort that, I guess, before we can determine whether there's respondeat superior liability, how would you frame the claim? Negligence, Your Honor, in particular. Professional negligence. Professional negligence. Thank you, Your Honor. Professional negligence specifically in Ms. Phelps' failure to handle the transference phenomenon correctly. And help me with that a little bit. As I understand it, this phenomenon is important to psychotherapy because it establishes the relationship between the therapist and the patient. That's correct, Your Honor. If you read the cases and the treatises, I'm sorry, the journals that those cases rely on, in fact, the transference phenomenon is crucial. It's a necessary part of the psychotherapy. Okay. Dr. Crowell, can I ask you a question? In professional negligence cases, certainly at trial and certainly at motion of summary judgment, the burden is on the plaintiff to show the triable issue of fact as to departure from the standard of care of physicians in the neighborhood, right? Yes. What evidence is there in this case, evidence, not argument, that there was professional negligence? Who's the expert for the plaintiff that says that Lori Phelps departed from the standard of care? The answer to that question, Your Honor, is that there are no experts for the plaintiff because they did not get that far. Well, but don't you have to have an expert affidavit saying the standard of care in the is a breach of the standard of care to create a triable issue of fact? Perhaps not in this case, Your Honor, because we do have evidence. This isn't the sort of case where the surgeon takes off the wrong foot. In that kind of case, you don't need any evidence of professional standard of care. But this case here is somewhat more sophisticated than taking off the wrong foot. But Your Honor, we do have an email from Ms. Phelps herself where she admits to the misconduct and there are cases that say that. All right. So the email. Can you give me a citation to that? Unfortunately, I can't, Your Honor, at this moment. I would like to reserve some rebuttal time, but I can't. What does she, in the email, does she say she had sexual relations with Mr. Campbell or does she say I handled the transference phenomenon inadeptly? Not in such technical language, Your Honor, but she admits the relationship was wrong and that she acted wrongly. Again, we did not get that far in this case because the district court judge granted summary judgment even before initial disclosures were exchanged in this case. So your position is that the admission by Ms. Phelps or Dr. Phelps that the relationship she maintained with Mr. Campbell was wrong is sufficient evidence for a trier of fact to find that she deviated from the standard of care of a professional in the community? What we would like to do, Your Honor, is go back to the transference. Is that, can you answer yes or no to that? I cannot answer yes or no to that question, Your Honor, simply because... Then what is the evidence which creates a triable issue of fact as to professional negligence? It's waiting to be discovered, Your Honor, because summary judgment was granted too early in this case. Did you move to, for a delay of summary judgment on the grounds that you needed further discovery under 56D? Because Mr. Campbell was pro se at the time, he did not know the technical requirements. However, in his opposition to the government summary judgment motion, he did specifically state that he needed, that he expected more investigation would reveal more facts to support his case and that he needed more discovery. He was essentially relying on the internal investigation by the VA, is that right? That's correct. He got those out of a FOIA request, Your Honor. And that's where the email came from or did that come from Mr. Campbell? I believe the email came from Mr. Campbell himself, Your Honor. But, and as I understand it, he supplied that to the district court on his own as part of the voluminous record that he presented? He did. And again, the voluminous record... What more is there at this point? Do we know? What we know is what did not occur. Ms. Phelps has not been deposed. Dr. McCutcheon has not been deposed. Dr. Van Gogh has not been deposed. Actually, they were opposed. I mean, sworn statements were taken from them, although it wasn't a formal deposition with an adversarial... That's the key, Your Honor. It was not adversarial. This was a government investigation in an administrative proceeding. Mr. Campbell was not invited to participate and ask questions of the witnesses at that investigation. He needs the opportunity... But my sense is that the plaintiff put forward roughly all the evidence that he had in support of his claim, and the district court concluded in light of Mr. Campbell's statement in supplying the evidence that there was no claim stated, and that based on the evidence that Mr. Campbell had, along with the fact that there's no conceivable way, even in light of the government's evidence, that any government supervisor could know what Phelps was up to. There was no claim, and so he converted the 12B6 motion to one under 56 and dismissed the case. So what do you need anything else besides that for? Judge, actually, the government's motion was a 12B1, a 12B6, and a Rule 56 motion combined. The judge concluded that there was enough evidence presented in opposition to the motion for summary judgment that she could analyze the claims on their merits under Rule 56. But again, then she ignored or did not catch, certainly did not discuss in her order granting summary judgment, Mr. Campbell's request for the need to take additional discovery. And moreover, there was no hearing on summary judgment. So Mr. Campbell did not have the opportunity to say, wait a minute here, Judge, I've not had a chance to even ask Ms. Phelps questions or Dr. McCutcheon questions. Well, but the government asked for summary judgment in its opening papers. It cited to Rule 56, did it not? It cited to a number of rules. In fact, if you look at the motion, it appears that the government was relying, its principal argument in the motion was on statute of limitations. I believe that these other arguments are kind of just thrown in there, well, if we can't get it on statute of limitations. I'll explore that with Ms. Johnson when she gets out. But let me go back to, I guess, my original question. I'm looking at this email of December 28, 2008, which I think is the one that Judge Baya was asking you about. Yes, Your Honor. Although my copy doesn't have an excerpt of record cite on it. And basically, it looks to me like what she's admitting is that it was wrong for her, as a psychologist, to have sex with a patient. But as I understand the sequence of events, that occurred months after she stopped treating him. It did, however. So what's the evidence of causation under your theory of mishandling of the transference phenomenon? Your Honor, the evidence of, and I'll answer this question. I would like to reserve the remainder of my time for rebuttal. But I believe the evidence of causation is the same as it was in Simmons, that the relationship and the mishandling of the transference phenomenon happened while Mr. It was Ms. Phelps at the time. She was not licensed to practice psychology. Can you explain to me what evidence there is of the mishandling while he was under her care? I can, Your Honor. And that is that she confessed her attraction to Mr. It was after the fact. I guess that's one of the problems I have with the theory of liability here is that we have a long period of time between the cessation of the rendering of therapy and everything else that happened after that. The question then is, Your Honor, do you look at this simply as a sexual misconduct case or do you look at this as a professional negligence case where the culpable conduct began during the inpatient therapy relationship itself? To Judge Baez's question, I don't see an expert declaration on behalf of the plaintiff saying that crying in the middle of therapy, opening herself up to discussion.  All of those being inappropriate. That occurred at the end again, did it not? All of those being examples of mishandling the transference phenomenon and failing to apply the principle of counter-transference. Yes, Your Honor. All of those things. I think I understand your theory and I'll give you a minute on rebuttal. Thank you, Your Honor. I apologize. No, go ahead. The government suggests that Simmons is not binding in no longer good law. Apparently, the Supreme Court of Washington has never looked at Simmons directly, but a number of court of appeals cases, including Thompson, have called Simmons, quote, the other side of the within the scope argument and suggest that we should be following Kuhn. How, what's your position on that? The position is, Your Honor, that unfortunately, Thompson was not decided as closely as I wish it would have been. That pains me because that's a Judge Gross opinion out of the Court of Appeals of Washington, a judge who I clerked for. Good judge. Very good judge. But in this case, I believe he did not distinguish between the facts very closely. There was no mishandling of the transference phenomenon. Mental health therapy was not involved at all in Thompson. I believe that's the key distinction between Simmons and Thompson. But the Washington courts have sort of gone off on this theory that almost unless the court is considering the rendering of therapy, that it's essentially a frolic on the part of the employee, that it's for sexual gratification personal to the employee and that it doesn't have anything to do with the interests of the employer. Am I wrong in reading the Washington case law? There is no published Washington case law that's to that effect, Your Honor. All of those cases involve something other than mental health therapy. Well, I guess it would be fair to say that the Washington courts seem to be going in a different direction than the Ninth Circuit went in Simmons. Only because the exact situation has not come up in the state of Washington. Our task is to apply these facts to this case and ask how the Washington courts would analyze it, is it not? And until the Washington courts clearly go in a different direction, the district court was bound by Simmons and was bound to follow Simmons. Okay. I will give you some time on rebuttal. All right. Ms. Johnson, good morning. Good morning. May it please the court, Kristen Johnson on behalf of the United States. I guess I'll start with picking up where we just left off, whether Simmons was rejected by the Washington court. I don't think Thompson could have been any clearer to have expressly rejected Simmons. As Your Honor pointed out, it called Simmons the other side of the within-the-scope argument and instead it went in favor of Kuhn. And Kuhn, the whole point is that if the misconduct is conducted not in furtherance of the employer's interest, but for personal motivation, then it's outside the scope. But you're focusing on the later tort, not the earlier tort. The earlier tort is negligence in mishandling transference. If I understand transference properly, and correct me if I'm wrong, it means that the patient transfers to the therapist the ideation of somebody like a parent, like a mother, right? At that point, there's no damage. But when the sexual relationship occurs with the mother figure, that's when the damage occurs. So the question is, did the act or omission of the professional in the first phase, which is mishandling transference, was that a substantial factor when the damages occur when the sexual relations occur? Absolutely not. What's that? What's the intervening cause? The Washington courts have addressed this. The court in La Valle, it's an unpublished opinion, but it's issued by Division 1, the same division that issued Thompson. And it addressed the exact situation we have here. A counselor in a relationship with a patient. Are unpublished opinions of the Washington courts binding precedence in the law of Washington? They are not, but they will give you... They're like our Mendispo's. They're persuasive, but not precedential. The reason I rely so heavily on this one is because it's the same panel that decided Thompson. It's got the same facts in a mental health setting, and notably, every single argument that the appellant raises here was raised and rejected flatly in La Valle. Specifically, with respect to whether there's a carve out or an exception for negligence, mishandling of the transference versus Thompson and other intentional sexual misconduct cases. The court said absolutely not. It said the fact that it's in a mental health setting and possibly negligence for the transference phenomenon is, quote, not a significant distinction. It said the critical inquiry is whether the sexual relationship was done for personal motives. And in this case, that's exactly what we have. The other argument that the La Valle case specifically rejected is the appellant's argument that, hey, maybe we can prove that her desire in entering to this relationship was not personally motivated, that it was somehow altruistic. That's exactly the same language that the plaintiffs used in La Valle. And the court of appeals said, no, even if you could prove that her motive was somehow benign, it was still wholly personal. If I could go to vicarious liability, please address the issue of negligence supervision. Why didn't, here's my question to you. When McCutcheon first learns that Campbell has an attraction to Phelps and then learns that Phelps has an attraction to Campbell, why doesn't McCutcheon do two things? One, tell Phelps never to have any more contact at all with Campbell. And secondly, check out Campbell to see if his instruction to Phelps has been carried out. And the failure to do that, negligence supervision? The district court didn't think that his actions taken as a whole fell below the standard of care for supervision. And I would say, based on, you have Dr. McCutcheon's testimony, okay? And the one thing is that that is unchallenged. It's undisputed. The plaintiff himself relies on that testimony. He's not saying that it was inaccurate or falsified in any way. And what Dr. McCutcheon did is he receives a report that she received the one email. He asks to see it in person. He asks to verify that Campbell reached out to her through her university email instead of her providing her email to him. He sits down with her, he composes a response to one of his purposes in doing that, if you read his testimony. Look how clear was Mr. McCutcheon, Dr. McCutcheon's instruction to Phelps with respect of the difference between carrying on or not. Try talking to Phelps about the difference between, and here's a wonderful phrase, it's so clear, the normative experience of attraction toward patients versus the display of attraction and behaviors that were improper. Now, what does that mean? Does that mean cut it out? No. Does that raise an issue of fact about whether the instruction is clear enough to constitute proper supervision? Isn't that the issue here? Could he have used different language in how he counseled her? Well, isn't that for the jury to determine? He could have used different language and he didn't, and therefore he was negligent in his supervision. And that's the arguments the plaintiffs are making. They could have, should have, would have, could have done more. That's a negligence case, always, when there's negligent omission. But the district court is looking at all of these undisputed facts on exactly what he did based on only what he knew and based on her repeated deceiving that nothing else was going on. I have to interrupt you, and I apologize, but the plaintiff's lawyer says, and I'd like you to discuss the fact that the district judge very early took on a motion to dismiss and converted it to a Rule 56 judgment with what he says was a pro bono, unrepresented plaintiff looking for more discovery who must have been rather surprised by the fact that he thought he was trying to prove his case and instead got turned away from the courthouse door. How do you address the argument that he should have more time, more discovery, and at least more notice of what was going to happen to his case here? Your Honor, the district court made two findings in that regard. One was that he submitted voluminous record evidence in support of his opposition, and the other was that he never said, whoa, wait, stop, I need more time. He didn't do either of those two things. And like the court has already pointed out, he had access to the entire administrative transcript or investigation, which included 13 deposition transcripts of all the witnesses involved. Well, depositions are sworn statements. Yes, correct. Sworn statements that were given under oath, 13 of them. I think we could all agree they probably weren't very friendly in the sense that the people  didn't know whether they had violated VA policy. But they did not. Ms. Campbell wasn't a participant, he didn't have a lawyer there who might have asked different questions than what the investigators did. This is true. He was a participant in the fact that he gave a statement. Well, he's the complainant, but beyond that. And then he's got his entire medical record, his inpatient and his outpatient records. He's got all the testimony or communications that he saved from both with Dr. Van Goda and with the intern, Ms. Phelps. He submits all that in opposition. And notably, he never challenges the accuracy of it. He never says, I wasn't there, I wasn't able to process it. What about the fact that you asked for summary judgment only on the statute of limitation, which the district court denied? You didn't ask for summary judgment on liability. I asked for a jurisdiction, a motion to dismiss under the FTCA because of scope of employment. For the vicarious liability claim. Because if they are not acting within the scope of employment, there is no FTCA liability and that's jurisdiction. But the problem, as I pointed out with Mr. Kroll, the Washington case law focuses upon sexual misconduct as essentially being more for personal gratification than for the employer's benefit. Right. But here, and I think the best case you have for that is the Everett Clinic case, but the medical doctor who's not rendering psychotherapy and he's having, you know, sex during quote unquote visits to the doctor. You know, here we have a different situation with a psychotherapist who's developing a different kind of a relationship where I don't understand much about this transference doctrine. I think I understand the theory of it. But I'm having a hard time sort of understanding the causal relationship between the sex that occurs months later, almost a year later, and exactly what it was that Dr. Phelps did during the 17 days of therapy that amounted to professional negligence and mishandling transference. Well, and that's what the district court found. It found that it granted his testimony that Dr. McCutcheon was absent 10 of the 17 days but found that there was no causal link that his absence during that 10 of the 17 days led Phelps to engage in a sexual relationship with him a year after treatment. And you're on a... But is it the sexual relationship alone or is it more than that? Is it misconduct or negligence and mishandling that arises when the therapist openly cries during therapy, starts opening up herself to her patient, talking about her own personal problems? I mean, I don't know enough about psychotherapy, but that sounds to me like not maintaining professional detachment when you're trying to render therapy to a patient. Okay. Either way, whether it's negligence and mishandling the transference phenomenon or it's an intentional sexual relationship a year later, either way, it's outside the scope of employment. And the Washington court addressed that in La Valle when they said... But the medical ethics rules suggest that there is a two-year, what is it, two-year limit that you're not supposed to have sex with somebody within two years of the cessation of therapy, which suggests to me that, at least in the eyes of the professional association, that this is misconduct. The question is, is it within the scope of her employment? And under the La Valle case, it said that an intimate relationship between a counselor, a mental health counselor, and a patient is, quote, far too removed from counseling duties to be considered as furthering the employer's duties. That's what this comes down to. And in this case, we have her admission in a personal letter she wrote to Mr. Campbell explaining why she engaged in the relationship with him. And I am paraphrasing, but she said, because it made me feel good. That's why she did it. Personal motive. In the same as the email communication, she said she did it for her benefit. And then we also have her testimony at the administrative review where she says that she hid portions of her relationship from Dr. McCutcheon because she was afraid she would get in trouble. So in no way is it furtherance of the VA's business that she engaged in this relationship with him, whether it was mistransference, negligence, or some intentional sexual misconduct. But you're equating, I guess the problem with that theory is that you're equating the sexual relationship as a necessary element of negligent mishandling of transference. And that's where I'm having a hard time following your argument. Because it seems to me that a psychotherapist who mishandles transference from the relationship that she establishes is guilty of negligence, whether the sex follows or not. I'm not sure that you even have to have a sexual relationship that follows. But again, I don't have a declaration from a psychotherapist who tells me that's wrong. Right. And then again, I guess the question goes back to, was that negligence within the sex? Okay. I think we understand your position. I've let you run over and I'm going to give Mr. Kroll a minute here to rebut. Thank you. Thank you, Ms. Johnson. Thank you, Your Honors. Just three points, possibly four. One that we have not got to yet, which is that there were two claims in this case. The other being negligent supervision, and we have not discussed that one yet. We believe that there was enough evidence in the record, such as it was, that facts favored Mr. Campbell along those lines. Because Dr. McCutcheon was not the only supervisor. He was not the only employee whose conduct was at issue here. There were at least a couple of other... Well, the problem with the other one is she did nothing. She thought she had to just sit around and wait until Phelps came to her and said, I have something I need to talk with you about. She didn't sit in on any of the therapy sessions as Dr. McCutcheon did. That's correct. And also, Dr. Vangoda, who provided outpatient treatment to Mr. Campbell, did not follow up on his admittedly guarded statements about, gee, what should I do if I believe that someone, you know, another therapy provider has committed misconduct? Pardon me, counsel. Point out some evidence in the record as to what the proper, reasonable, professional standard of care is as to supervision. Again, we did not get that far, Your Honor. There's nothing in this. I think it's central to your claim to show that the court abused its discretion in not granting you further discovery. In your trial court record, where is it shown that the plaintiff specified what further discovery he intended to pursue and what it would be likely to produce? Unfortunately, Mr. Campbell, being pro se at the time, did not get to that second part. But would you say that we should adopt a different rule for pro se non-moving parties in motion summary judgment than we do with persons who are represented? I would say that in the Ninth Circuit, there is no clear law either way as to whether a Rule 56D or F motion is required. But I can point to, at least in the record, it's the ER 119 to 120 and ER 134 where Mr. Campbell says, I believe that further investigation will produce more facts in that claim. But we've got all sorts of cases that say that, simply saying, I'd like to postpone motion summary judgment because I want to conduct more discovery, is insufficient unless you tip off the district court judge what that discovery is going to be and what you expect it to produce, because otherwise the district court judge says, well, this may be just a delaying tactic, right? Now, what is in the record to tell me, even pro se, what Mr. Campbell was promising to produce during discovery? I don't believe that can be found in the record, Your Honor. I think so. If I could move on to a couple other points. I think you're out of time. I'd give you two minutes over. Mr. Crowley, I do want to thank you, though, on behalf of the court for taking the appointment. We very much appreciate your willingness to do it. Thank you. Thank you, Your Honor. We appreciate it being put into the program. Thank you. The case just argued is submitted. And we will next hear argument in the case of Nusrat, Boddy, and Irfan, Samuel v. Guild Mortgage Company, number 12-35035. Thank you.
judges: Murphy, Tallman, Bea